### Bell and others *vs.* Fleming's Executors and others.

A mortgage given to secure future advances is valid in this state.

Whether it will secure advances to the time only when the subsequent encumbrance was actually executed, or to the time of the actual notice of such future encumbrance, may be deemed not altogether a settled question.

It is not necessary that such mortgage should show on its face that it was given as a security for future advances; though, as a matter of propriety and safety, this should be' done.

Parol evidence is competent for the purpose of showing that the mortgage was intended to secure a debt different from that expressed in it.

Neither does such mortgage contravene the registry laws of this state.

The registry of a mortgage is not intended as notice of the amount due upon it.

W. W. F., being indebted to his father, T. F., executed to him a mortgage. Some time after, he made a general assignment, under the act for the benefit of his creditors. The father presented his claim against the son to the assignees, stating therein, and in the affidavit annexed thereto, that part of it was secured by mortgage. Afterwards T. F. dying, his will contained this clause—" In order to place my children as nearly upon an equality as may be, I direct that all the debts with which my sons are respectively charged upon my leger shall be deducted from their respective shares of my estate, allowing to each of them a credit of twenty-five thousand dol-

lars, being the sum I have advanced, or given, hereby to their sisters, excepting always my son W. W. F., against whom I desire my executors to prosecute no suit or claim for any debts he may owe me; but not to abandon the proceedings commenced against the estate assigned by him to Messrs. Bell and Markley for the benefit of his creditors."

*Held*, that the above recited clause did not operate as an equitable release of the mortgage.

*Held further*, that the testator, by proving his debt before the assignees in the manner specified, did not abandon his mortgage security.

---

*A. Browning* and *Att'y Gen. Dayton*, for complainants.

*R. S. Field* and *T. S. Carpenter*, for defendants.

THE CHANCELLOR. William W. Fleming and Daniel S. Miller, jun., were seized in fee simple, equally, as tenants in common, of several large and valuable tracts of land, situate in the counties of Burlington, Camden, and Atlantic, and generally known and designated as the "*Atsion estate.*"

On the eighth of August, eighteen hundred and fifty-four, William W. Fleming executed to his father, Thomas Fleming, then residing in the city of Philadelphia, a bond, in the penal sum of two hundred thousand dollars, conditioned for the payment of one hundred thousand dollars, in two years from the date thereof, with interest thereon, in quarterly payments; and to secure the payment of the said bond, according to its condition, the said William W. Fleming and his wife executed to the said Thomas Fleming a mortgage upon the "Atsion estate."

After the execution and recording of this mortgage, and on the eleventh of September, eighteen hundred and fifty-four, William W. Fleming made a general assignment, for the benefit of his creditors, to the complainants in this suit, by virtue of which his interest and title in the "Atsion estate" became vested in the complainants, as his assignees.

Immediately after the assignment, Thomas Fleming

presented claims to the assignees, of debts due to him from his son, amounting to upwards of one hundred and eighty thousand dollars, which were incorporated into a list of creditors, which the assignees were required by law to make, and which list was filed with the clerk of Common Pleas of the county of Burlington. Among these claims, so presented to the assignees by Thomas Fleming, was the debt secured by the bond and mortgage before mentioned.

Since then Thomas Fleming has deceased, leaving a will, bearing date the fifteenth of February, eighteen hundred and fifty-five, which was after the presentation of his claims, as aforesaid, to the assignees. By his will, he gives some directions to his executors in reference to the prosecution of the claims so presented.

There are three questions involved in this suit. These arise between the complainants, as assignees of William W. Fleming, and the executor of the will of Thomas Fleming, who has taken out letters testamentary in this state.

The *first* question is as to the validity of the mortgage; *second,* as to the construction of the will of Thomas Fleming, whether it operates as a release of the mortgage; *third,* the effect upon the mortgage security, resulting from the fact of proof of the debt under the assignment.

It is insisted that the mortgage is invalid, because it was given, in part, to secure future advances. The broad ground is taken, that a mortgage for future advances is not valid in this state. At the time of the execution of the mortgage, there was a debt due from William to Thomas Fleming, for money advanced, of $38,894.61. The mortgage was executed to secure that debt, and such further advances as Thomas Fleming might make to his son, not exceeding the amount mentioned in the bond and mortgage. Between the date of the mortgage, which was the eighth of August, 1854, and the date of the deed of assignment, which was the 11th of September, 1854,

Thomas Fleming advanced to his son, in different sums, from time to time, $20,024.58, making the aggregate debt secured by the mortgage $58,919.19. It is contended, not only that the mortgage is invalid as a security for the advances which were made subsequent to its execution, but as to the debt, also, which was due at the time of its execution.

It has been repeatedly decided that a mortgage to secure future advances is a valid security, as against subsequent encumbrances, for all advances made up to the time when such encumbrances intervene. Whether it will secure advances to the time only when the subsequent encumbrance was actually executed, or to the time of the actual notice of such future encumbrance, may be deemed not altogether a settled question. The authorities are numerous, and are very decided and uniform in reference to the validity of such mortgages, as against a subsequent lien for all advances prior to such liens being acquired. *Shirras and others* v. *Caig and Mitchell,* 7 *Cranch* 50; *Brinkerhoff* v. *Marvin,* 5 *J. C. R.* 327; *Livingston* v. *McInlay,* 16 *Johns. Rep.* 165; *The Bank of Utica* v. *Finch,* 3 *Barb. C. R.* 298, 303; *Leeds et al.* v. *Cameron,* 3 *Sumner's Rep.* 488; *Gardner* v. *Weber,* 17 *Pick.* 407; *Com. Bank* v. *Cunningham,* 24 *Pick.* 274. In looking at these authorities, it will be seen that none of the objections which counsel, in the argument of this case, urged against the validity of such a mortgage has failed to receive the due consideration of the courts. It was insisted, as an objection to its validity, that this mortgage was false on its face; that while it purports to be a security for a debt of $100,000, actually due, the debt really existing was but little over one-third of that amount. In *Shirras and others* v. *Caig and Mitchell,* it was part of the argument of counsel, that the mortgage untruly recited the whole transaction, and that the mortgage was made only to cover future contingent responsibilities. *Ch. J. Marshall,* in his opinion, says, "It is true the real transaction does

not appear on the face of the mortgage. The deed purports to secure a debt of £30,000 6*s.* sterling, due to all the mortgagees. It was really intended to secure different sums due at the time from particular mortgagees, advances afterwards to be made, and liabilities to be incurred to an uncertain amount. It is not to be denied, that a deed which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is certainly always advisable fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favor of a person who has been, in fact, injured and deceived by the misrepresentations." In the case of *The Bank of Utica* v. *Finch,* the Chancellor says the security may be taken in the form of a mortgage or judgment *for a specific sum of money* sufficiently large to cover the amount of the floating debt intended to be secured thereby. He quotes the case in 7 *Cranch* as recognising the principle. In the case of *The Commercial Bank* v. *Cunningham,* the court particularly notices the objection, that the true consideration did not appear on the mortgage, but was the matter of a separate agreement between the parties, which was not recorded. The court said that the agreement, that the mortgaged property should stand bound for future discount and advances, was valid and unexceptionable. In New Hampshire they have a statute, as appears in *Leeds et al.* v. *Cameron,* 3 *Sum.* 492, "that no title or estate in fee simple, &c., of any lands, &c., shall be defeated or encumbered by any agreement whatever, unless such agreement or writing of defeasance shall be inserted in the condition of said conveyance, and become part thereof, stating the sum or sums of money to be secured or other thing or things to be performed."

B*

The objection, that parol testimony is not competent for the purpose of showing that the mortgage was executed, and intended to secure a debt different from that expressed in the mortgage, was particularly noticed by the *Vice Chancellor* in the case of *The Bank of Utica* v. *Finch,* 3 *Barb. C. R.* 297. Its admissibility was properly sustained, on the ground, that it was offered not to contradict the written instrument, but to show the purpose and intent for which it was executed. But this objection must necessarily have been considered in every case where the validity of a mortgage for future advances has been sustained.

A further objection was started—that such a mortgage contravenes our registry laws, and defeats their main purpose; that instead of the record being a notice to subsequent purchasers and creditors of the real transaction, it holds out a false light to misguide and embarrass them. But although the statute requires that the registry must contain the amount of the mortgage, and when payable, the registry is not intended as notice of the amount which is actually due upon the mortgage. A mortgage may be half paid a week after it is executed, and so only half the amount be due upon it as it stands upon the record. It may be a mortgage of long standing with a large accumulation of interest upon it, so that the amount due upon it is very much larger than appears from the record. Neither the mortgagor nor the mortgagee is bound to keep the record accurate as to the amount due upon the mortgage. If it had been intended that the amount appearing upon the record should be conclusive between the parties, and if the object of recording the amount was that purchasers and creditors might rely upon the record as to the amount actually due between the parties, then the statute is very imperfect in its provisions for accomplishing such an object. But this was not the object. It was simply to give to parties interested such notice as would lead them to proper inquiries, and

enable them to protect their interest. The encumbrance can never stand for a larger amount than the record calls for. If the inquiring party chooses to take a subsequent lien, or to purchase subject to the amount of encumbrances appearing upon the record, he is sure they cannot exceed that amount with the interest. But if the amount is larger than he anticipated, he is notified by the record where to inquire as to the true character of the encumbrance, and the amount due upon it. There is nothing in our registry act which places a mortgage for future advances upon any different footing from those where they have been sustained by the authorities to which reference has been made.

Where there are so many authorities sustaining the validity of mortgages precisely similar, as to the particular we have been considering, to the one in controversy in this suit, and as no case has been produced which questions even the correctness of those authorities, it could scarcely be expected that this court, without any new light shed upon the subject, would make a decision opposed to the principles which they have established.

But this question is not a new one in this court. It was very elaborately argued in the case of *Robinson et al.* v. *Urquhart et al.*, decided at the last term, and a similar mortgage was sustained. Several terms since, in a case not yet reported (the name of which I cannot now recall), the same question was argued and decided, and the mortgage was declared valid. I took occasion, in my opinion in the case last referred to, to suggest the propriety and safety of always stating in the mortgage the real character of the transaction. If the transaction is a fair one, there can be no objection to state it as it really exists. By stating it otherwise, it renders the security a suspicious one. It would require very little, in addition to this circumstance, to induce the court to postpone such a mortgage to a creditor or *bona fide* purchaser.

This case, however, is relieved from any suspicion of

unfairness. There is no doubt that the mortgage was executed in good faith, with the expectation, on the part of William Fleming, that he would receive the advances, and with the intention, on the part of the father, to make them. The *bona fides* of the transaction is apparent from the manner and promptness with which the advances were made. There is no one before the court who makes any complaint that he has been misled or been placed in a worse position in consequence of the character of the mortgage.

The next question is as to the construction of the will of Thomas Fleming, and how it affects this mortgage. By the ninth clause of his will, the testator declares as follows:

"9. In order to place my children as nearly upon an equality as may be, I direct that all the debts with which my sons are respectively charged upon my leger shall be deducted from their respective shares of my estate, allowing to each of them a credit of twenty-five thousand dollars, being the sum I have advanced or given hereby to their sisters, excepting always my son William W. Fleming, against whom I desire my executors to prosecute no suit or claim for any debts he may owe me; but not to abandon the proceedings commenced against the estate assigned by him to Messrs. Bell and Markley for the benefit of his creditors."

Without the last member of the clause of the will I have recited, there can be no doubt it would have operated as an equitable release of the mortgage. If the direction to the executors, to prosecute no suit or claim against William, for any debts he might owe the testator, was without any qualification, the fair and legitimate construction would be, that it was the testator's intention to forgive William all debts that he owed him. To have enforced this mortgage upon the ground, that it was a proceeding *in rem*, and not in *personam*, and that collecting the debt out of William's property was not prosecut-

ing a suit or claim against him, would have been a distinction to which this court would not have listened. This court would have construed the will as an equitable release of the debt, and would have protected William against its enforcement, both against him personally and against his property.

What is the effect upon the direction to his executors, " to prosecute no suit or claim for any debts he may owe me," or the qualification annexed to such direction, " *but not to abandon the proceedings commenced against the estate assigned by him to Messrs. Bell and Markley for the benefit of his creditors?*" This qualification amounts to a positive direction to his executors to prosecute the proceedings already commenced by the testator against the estate assigned to Bell and Markley. A part of the estate assigned was the mortgaged estate. If, then, the proceedings the testator had already commenced against that estate were for the purpose of subjecting it to the payment of the mortgaged debt, it appears to me that the faithful prosecution of those proceedings by the executors involves the obligation, on their part, to conduct that prosecution in such a manner as to make most out of the estate.

But it was insisted, by counsel, that the testator having proved his mortgage debt under the assignment, the legitimate fruit of such proceeding is a dividend upon his debt; that when those dividends should be received by the executors, there would be an end to the proceedings referred to by the testator, and that the executors could accomplish nothing more without instituting other proceedings, which could, in no proper sense, be regarded as the "proceedings commenced against the estate" mentioned by the testator in his will. It is a very dangerous mode of testing the intention of a testator by so ingenious and technical an argument. A testator has, very frequently, in this way been argued into and out of his real intention. But admitting the premises, that the

legitimate fruit of the proceedings is a dividend upon the the debt, must not the executors, if those proceedings are properly conducted, before they are terminated, get the whole benefit of the mortgage security ? Assuming that the dividend, which by law a mortgage creditor is entitled to receive, is upon the balance of his debt, after he has exhausted his security, then this mortgage security must necessarily be first exhausted before it can be ascertained to what dividend the executors are entitled. Now, the proceedings which are necessary to be instituted to reach this result would properly be a part of, and a continuation of the proceedings commenced against the estate by the testator, and to which reference is made in his will. The fallacy of the argument consists in assuming that it is necessary for the executors to institute other proceedings, in order to obtain the benefit of their mortgage after the proceedings already commenced shall have been terminated, whereas the subjecting of the mortgage security to the payment of the debt must necessarily precede their receiving the dividend to which they are entitled. Indeed the very agreement which the parties have entered into in this suit, to submit all the equities to be determined by the court, is an irresistible argument that this mortgage security must be disposed of before the proceedings under the attachment can be properly and legally disposed of and terminated.

But looking for the intention of the testator in a broader and more liberal view of the whole matter—taking the language of the will in connection with all the facts relating to the subject matter we are considering— it appears to me to be a very forced construction to put upon the will, that the testator meant to release the estate from the mortgage. His son was insolvent; and the reason is plain enough why he released him from all personal liability of his indebtedness. But he had good security for part of his debt. To release that was no benefit to his son, but was taking just that amount out of his

own estate. The counsel was driven to the argument, that the testator was actuated by motives of generosity; that he threw away his security, and was willing to come in and share his loss with the other creditors. But if such were his motives, he would not have left them subject to so much ambiguity.

It was attempted to draw an inference in favor of the testator's intention to release the mortgage, from the disposition manifested by him through the whole will, and particularly in the clause recited, to make an equal disposition of his property among his children. It is insisted, if this mortgage is enforced, then William will not get, in the division of the estate, an equal share with his brothers and sisters. Laying out of view the fact, that it by no means appears, after a very nice calculation, that by releasing the mortgage, it will make William's portion any nearer equal with that of the testator's other children than it will be by enforcing it, it is very evident that no inference, whatever, of intention can, with any propriety, be drawn from the consideration referred to. William had assigned all his property for the equal benefit of his creditors. His debts amounted to upwards of six hundred and sixty thousand dollars. A release of the mortgage could not benefit the son personally. He would be released from his debts, as to those creditors who should come in under the assignment, whether the mortgaged estate was, or was not, thrown into the common fund. It is a most violent presumption under such circumstances, to be derived from the fact of an intention on the part of the testator to make any equal distribution of his property among his children, that rather than disturb this equality, he would prefer the creditors of William over his other children, although, by his doing so, his son could derive no possible advantage from such preference. If the testator had intended to release the mortgage, from motives of justice and morality so uncommon among men, he would have said so plainly, and

not left it to mere inference.   I do not think the will will bear such a construction.

The only question remaining is, as to the effect of the testator's proving his mortgaged debt under the assignment.   It is insisted that, by proving his debt, he abandoned his mortgage security, and that all he can claim, after having proved his whole debt, is to come in with the other creditors for a dividend upon it.   What are the rights of a mortgage creditor under the assignment, and to what dividend, if any, is he entitled upon his debt?

The act puts all creditors upon an equal footing.   They are to present their claims to the assignee, under oath or affirmation, within three months after the assignment. The assignee, or any creditor or other person interested, may file exceptions to the claim of any creditor.   These are disposed of in the manner prescribed by the act. The assignee is then to " proceed to make, from time to time, fair and equal dividends among said creditors of the assets which shall come to hand, in proportion to their claims."   This is all that is said in the act as to the manner in which the dividends shall be made.   There is nothing said as to mortgage creditors, except in the *first* and *thirteenth* sections of the act, where they are recognised as preferred creditors to the extent of their liens. The first section declares, that every assignment shall be for the equal benefit of creditors, and that all preferences of one creditor over another, or whereby one or more shall be first paid, or have a greater proportion in respect of his, her, or their claim than another, shall be deemed fraudulent and void, excepting judgment and mortgage creditors, when the judgment has not been by confession for the purpose of preferring creditors.   The thirteenth section gives full power and authority to the assignee to refer to arbitration, settle and compound, and to agree with any person touching all matters belonging or appertaining to the estate, and to redeem all mortgages and conditional contracts.

It was conceded by counsel, on both sides, in argument, that the mortgage creditor is entitled to a dividend upon any balance that may remain unpaid of his debt after the security is exhausted. This was the construction put upon the act, by Chief J. Hornblower, in *Vanderveer* v. *Conover et al.*, 1 *Harr.* 491. This, certainly, is the most unfavorable position in which the mortgagee can be placed. It cannot be contended, tha tbecause a creditor has a mortgage, or other security, for his debt, he is thereby deprived of all benefit under the assignment, or that he must abandon his security, and throw it into *hotch potch.* Such a construction has never been suggested by court or counsel. The only question that has ever been raised, as to the rights of the mortgagee in reference to his interest in the assigned property, has been, whether he could claim a dividend upon his whole debt, and look to his security for the balance, or whether the security must be first appropriated, and the creditor be entitled to a dividend only upon any deficiency. In the case of *Greenwood* v. *Taylor*, 1 *Russell & Mylne* 185, in a suit instituted for the administration of the assets of the estate of a deceased mortgagor, it was contended, by counsel, that the mortgagee had a right to avail himself, concurrently, of all the remedies which belonged to him, either in respect of his specific lien on the estate, or as a general creditor of the mortgagor by virtue of the covenant for the payment of the mortgage money; but the *Master of the Rolls (Sir John Leach)* said, the rule in bankruptcy must be applied here, and the mortgagee cannot be permitted to prove for the full amount of his debt, but only for so much as the mortgaged estate will not extend to pay. This rule is not founded, as has been argued, upon the peculiar jurisdiction in bankruptcy, but rests upon the general principles of a court of equity in the administration of assets. The mortgagee, who has two funds, as against the other specialty creditors, who have but one fund, must resort first to the mortgage security,

and claim against the common fund only what the mortgaged estate is deficient to pay." The principle upon which the case of *Greenwood* v. *Taylor* was made was questioned by Lord Cottenham, in *Mason* v. *Bogg*, 2 *Mylne & Craig* 446, where he says, "If there were such a rule of equity as that which Sir John Leach propounds it would be found in some text book or decided case." And, "with respect to the principle of that case, it is to be observed that a mortaagee has a double security: he has a right to proceed against both, and to make the best he can of both." Notwithstanding what was said by the Lord Chancellor, it was remarked, by counsel in the case, that *Greenwood* v. *Taylor* had been acted upon ever since it was decided. The case is referred to by Justice Story, in his 1 *Vol. Eq. J.* § 633, and the principle stated, in the language of the *Master of the Rolls*, without any doubt as to its accuracy or its propriety. After stating the general principle to be, that if one party has a lien on, or interest in two funds for a debt, and another party has a lien on, or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, *whenever it will not trench upon the rights, or operate to the prejudice of the party entitled to the double fund,* the learned author illustrates the rule by a reference to the case of *Greenwood* v. *Taylor*, using the very language of the *Master of the Rolls;* yet it is perfectly manifest, that so far from the principle being illustrated by this case, that the case was decided in violation of the rule, *for the rights of the mortgagee were trenched upon, and he was prejudiced by its application.* The *Master of the Rolls* certainly applied the rule without any regard to the important qualification always annexed to it. If he had simply declared, that he would adopt the rule upon the broad ground, that *equality is equity,* it is quite probable it would have been followed without its propriety being questioned.

If, then, the mortgage creditor is entitled to a dividend upon any deficiency remaining after exhausting his security, how is he to obtain it? What proof of his debt must he make to the assignee?

In this case, the testator made out his account against the debtor. It was for money lent and advanced, and money paid in different sums, from time to time, from July 1st, 1854, to September 11th, 1854. The whole amount was $182,195.76. At the foot of the account was this memorandum: "N. B. Of the above sum one hundred thousand dollars is secured by a mortgage on real estate in New Jersey, given by the said William W. Fleming to the said Thomas Fleming, dated the 8th day of August, A. D. 1854, recorded in Burlington, Camden, and Atlantic counties, New Jersey." To this is annexed the affidavit of the testator, in which he swears that the debtor is justly indebted to him in the sum stated in the account, and which concludes as follows: "for which sum of 182,195.76 dollars this deponent hath a just claim against the estate of the said William W. Fleming, *of which $100,000 is secured by a mortgage also, as before stated.*"

Exceptions were filed to the account, which have undergone the investigation prescribed by the statute. It is agreed by the parties, by an agreement filed in this suit, that there is due upon the mortgage $59,297.50.

It is insisted, on the part of the assignees, that, by this mode of proof, the testator relinquished his security, and that he is barred from all benefit of his mortgage by virtue of the fourteenth section of the act, which declares, that "with respect to the creditors who shall come in under said assignment, and exhibit their demands, as aforesaid, for a dividend, they shall be wholly barred from having afterwards any action or suit at law or equity against such debtors or their representatives." It is insisted that the mortgage cannot be enforced, except by a suit at law or equity, against the assignees, as the representatives of the debtor, and that such suit, after proof of the debt, is barred by the statute.

We have seen what the rights of the mortgagee are under the assignment. Now, if it can be shown that he could secure those rights in no other mode than by the proof he made to the assignee, it cannot be that, by his adopting the only mode which the statute left open to him to secure his rights, he thereby forfeited them.

The act declares, that if any creditor shall not exhibit his claim within three months after the date of the assignment, such claim shall be barred of a dividend. This mortgage creditor was obliged to present his claim within three months. It was, therefore, out of his power to prove so much of his debt only as might be due him after exhausting his security. There was no way for him to subject the mortgaged estate to the payment of his debt, except by a bill in this court, and such proceeding could not have been brought to maturity within the time limited by the statute for proof of his claim. There was no alternative left him but to prove his debt as it really existed. He waited until within a day or two of the expiration of the three months, and then proved his claim, reserving, in the forms of his proof, the benefit of his mortgage. This was the object, and it was the legal effect of the memorandum at the foot of the account, and the statement in the affidavit as to the character and extent of his mortgage. The claim he made was for all his legal and equitable rights under the assignment. It cannot be that, having made his claim in the only mode by which he could secure to himself his rights under the assignment, he has thereby forfeited any of those rights. No court would ever put such construction upon the act; and yet such is the inevitable result, if the construction contended for on behalf of the complainants is adopted.

There were some cases in bankruptcy referred to, and among others that of *ex parte Downes*, 18 *Ves.* 290, which was the case of mortgagee, who, electing to give up his mortgage, was admitted to prove, under a commission of bankruptcy, against the mortgagor. Finding the estate

turned out better than he anticipated, he presented a petition, asking that he might retract his election, which was refused. There can be no doubt that the mortgagee is at liberty to abandon his security; but the question is, whether the fact of his proving his debt amounts to an abandonment of his security. The statute and the rules of the courts which have been established to carry out the bankrupt law are entirely different, as to proof of debts, from those which govern under our attachment act. Under the bankrupt law, a creditor, when he comes to prove his debt, is obliged to swear whether he has a security or not, and he must then elect whether he abandons it or not. If he refuse to abandon it, the proof of his claim is deferred, and the commissioners sell the estate; and after appropriating the proceeds to the payment of the debt, then permit the creditor to prove for the deficiency. In *Cook's Bankrupt Laws* 119, and in *Eden on Bankrupt Law* 104, it is said, "it has been a practice, long established in bankruptcy, not to suffer a creditor holding a security to prove, unless he will give up the security, or the value has been ascertained by the sale of it. The reason, as observed by Lord *Eldon*, is obvious: till his debt has been reduced by the proceeds of that sale, it is impossible correctly to say what the actual amount of it is; and in the event of any doubt attaching upon his right to retain the security, he is enabled, in a contest with the rest of the creditors, to sustain his disputed title in a situation of predominant advantage."

This question has received some consideration from our own courts. In the case of *Vanderveer* v. *Conover et al.*, before referred to, the question was not directly involved in the decision of the cause. The Chief Justice, however, in reviewing the operation and provisions of the statute, says, "If a judgment creditor, apprehending that the property actually bound by his judgment or execution may not be sufficient to satisfy him, thinks proper to come in under the assignment, he has a right to do so.

C*

By doing so, he does not waive his priority as a judgment creditor, so far as respects the property bound by his judgment or execution, but is entitled to a dividend upon any balance that may remain due." In *Moses* v. *Thomas*, 2 *Dutcher* 125, the court decided, that a judgment creditor who puts in a claim under an assignment does not thereby waive his lien under an execution. This case was unanimously affirmed in the Court of Errors and Appeals.

There is some embarrassment in adjusting the claim of a mortgage creditor who proves his debt. The mortgaged premises must necessarily be disposed of before it can be ascertained to what dividend the creditor is entitled. Unlike the bankrupt law, and the proceedings under it in this respect, the act makes no provision for the sale or disposition of any such securities. The pledge can only be sold by a bill in this court. The assignees cannot compel the creditor to file such bill. They may refuse to give him a dividend until he does; but such refusal will operate to the delay and prejudice of the other creditors. The assignees have the power, and it is their duty, so to dispose of the property, real and personal, of the debtor as will be most advantageous for the creditors generally. They may compound with the mortgage creditor by fixing a value upon the security. If no compromise can be made, there is no difficulty in the assignees filing their bill, and obtaining such decree as will secure the interest of all parties.

I am of opinion that the mortgage is a valid one; that it is not released by the will of Thomas Fleming; and that, as a security, it was not impaired by the mortgagor's proving his mortgage debt under the assignment.