# COURT OF ERRORS AND APPEALS.

Between BELL and others, appellants, and FLEMING'S EXECUTORS and others, respondents.

That a mortgage given to secure future advances is valid, as between mortgagor and mortgagee, is no longer an open question.

The registry act was not designed to prohibit the creation of such security, its object being to give notice of the existence of the encumbrance, and to prevent it exceeding the amount specified in the record.

W. W. F., being indebted to his father, T. F., executed to him a mortgage. Some time afterwards he made a general assignment under the act for the benefit of his creditors. The father presented his claim against the son to the assignee, stating therein, and in the affidavit annexed thereto, that part of it was secured by the mortgage. Subsequently T. F. dying, his will contained this clause: "In order to place my children as nearly upon an equality as may be, I direct that all the debts with which my sons are respectively charged upon my leger shall be deducted from their respective shares of my estate, allowing to each of them a credit of $25,000, being the sum I have advanced or given hereby to their sister, excepting always my son W. W. F., against whom I desire my executors to prosecute no suit or claim for any debts he may owe me; but not to abandon the proceedings commenced against the estate assigned by him to Messrs. Bell and Markley for the benefit of his creditors."

*Held*, that the provision of the statute with respect to the creditors who shall come in under the assignment, and exhibit their demands for a dividend, which declares that they shall be wholly barred from having afterwards any action or suit at law or equity against such debtors or their representatives, was not designed to affect any security in the hands of the creditor, but simply to relieve the debtor from all personal liability for debts upon which the creditor *accepted or demanded a dividend.*

*Held further*, that by the above recited clause of the will, it was not the intention of the testator to release the mortgage debt.

This case was decided by the Chancellor, in May term, 1858, and his opinion will be found in this volume, *ante*, page 1.

*Abraham Browning* and *Attorney General*, for appellants.

*Richard S. Field* and *T. P. Carpenter*, for respondents.

The opinion of the court was delivered by

GREEN, C. J. On the 8th of August, 1854, William W. Fleming, of the county of Burlington, executed to his father, Thomas Fleming, of the city of Philadelphia, a bond conditioned for the payment of $100,000, in two years from the date thereof, with interest. To secure the payment of his bond, he also executed and delivered to his father a mortgage upon real estate in New Jersey. At the time of the execution of the bond and mortgage, there was due from the mortgagor to the mortgagee only $38,694.61. The mortgage was intended to secure that amount, and also as a security for future advances. The mortgage was duly acknowledged and recorded in the counties where the lands are situate.

On the 11th of September, 1854, about a month subsequent to the date of the mortgage, William W. Fleming made a general assignment for the benefit of his creditors.

On or about the 9th of December, 1854, Thomas Fleming presented to the assignees, under oath, claims against the estate of William W. Fleming to an amount exceeding $182,000. The claim presented to the assignees was accompanied by a statement, that $100,000 of the amount claimed was secured by a mortgage given by the said William W. Fleming to the claimant, dated the 8th of August, 1854, and recorded. The fact that $100,000 of the debt was secured by the said mortgage, is also stated in the affidavit of Thomas Fleming, annexed to the claim.

The list of the creditors, with a statement of the claims presented to the assignees, were by them filed in the clerk's office of the county of Burlington, pursuant to the requirement of the statute. Exceptions to the claim of Thomas Fleming having been filed by the assignee and by certain of the other creditors, the exceptions were

heard, and the claim adjudicated and settled by the Court of Common Pleas, on the 18th of October, 1856. Upon that settlement there was allowed to Thomas Fleming, upon his claim, $95,704.60. The balance of his account was disallowed. Of the sum allowed, $59,297.50 was secured by the aforesaid mortgage. The real estate covered by the mortgage to Thomas Fleming passed by the assignment of William W. Fleming to his assignees.

On the 16th of March, 1855, Thomas Fleming died, having duly executed his last will and testament, bearing date on the 8th of February, 1855, subsequent to the presentation of his claim to the assignees.

By an agreement of counsel, bearing date on the 19th of December, 1857, it was submitted to the Court of Chancery to determine in this cause upon the validity and effect of the said mortgage, and whether the same is a valid and subsisting lien upon the lands and premises therein described, and as against the assignees, as a preferred debt to the amount thereby secured. The mortgage, by the decree of the Court of Chancery, was declared to be a valid and subsisting encumbrance upon the mortgaged premises, and the amount due thereon a preferred debt, as against the assignees. From that decree the assignees have appealed.

1. It is objected that the mortgage did not constitute a valid lien upon the mortgaged premises, because the amount it purports to secure was not due at the time of its execution, being in fact given as a security for future advances. No actual fraud is imputed to the parties in its execution, but it is insisted that a mortgage given for future advances is not, in this state, a valid security as against subsequent encumbrances.

That such mortgage given to secure future advances is valid, as between the mortgagor and the mortgagee, does not seem to be seriously questioned.

The point has been so repeatedly settled by judicial authority that it can no longer be regarded as an open ques-

tion. It is, indeed, conceded by counsel that since the decision by the Supreme Court of the United States, in *Shiras* v. *Caig and Mitchel*, 7 *Cranch* 50, the authorities have been uniformly in accordance with the opinion expressed by Chief Justice Marshall in that case, and that a mortgage given for future advances, duly registered, is held, both by the federal courts and in the courts of the several states, to be not only a valid contract against the mortgagor, but a valid lien as against subsequent encumbrancers or *bona fide* purchasers. But it is insisted that such mortgage cannot, under the peculiar phraseology of our registry act, constitute a valid encumbrance as against subsequent purchasers for value; that the registry of such mortgage is not legal, and can constitute no notice to purchasers.

The mortgage, upon its face, and as it appears upon the registry, was given for a bond debt of $100,000. No such debt, it is said, ever existed, both bond and mortgage being but a collateral security for other simple contract debts. The debt registered is different, in character, amount, and time of payment, from that intended to be secured.

The statute requires that there shall be entered on the registry of the mortgage the *mortgage money, and when payable*, and it is insisted that a compliance with the statute requires that the amount for which the mortgage is a security at the date of its execution should be truthfully stated; that the mortgage stands as security for that debt, and for no other. If it be admitted that a bond and mortgage given for future advances is valid as between the parties, then there is a strict compliance with the requirements of the registry act. The mortgage is, in terms, given to secure the amount of the bond. The mortgage money, and when payable, in contemplation of law, is the bond debt, and the time therein specified for payment. The $100,000 was the debt designed to be secured by the mortgage, and, by its terms, payment of the principal

could not be enforced within two years from its date. The act was designed to give notice not of the precise amount due upon the mortgage : that, in the nature of things, it must often fail to do. Payments may be made upon the bond. Interest accumulated so that the registry cannot indicate the precise amount. All that the registry act contemplates is, that notice shall be given of the extent of the security, and that the encumbrance shall not exceed the amount specified in the record. That is sufficient to put the party upon inquiry, and guard him against the dangers of secret encumbrances.

There are, perhaps, no earlier adjudications in this state upon the validity of such mortgages to secure future advances than those referred to by the Chancellor in his opinion ; yet such mortgages have long been in use, and their validity unquestioned. In the case of *The Trenton Banking Co.* v. *Woodruff*, 1 *Green's Ch. R.* 118, the second mortgage of the complainants was originally given by Thomas L. Woodruff and wife to Elias D. Woodruff " to secure the payment of all and every promissory note then drawn, or thereafter to be drawn, by the said Thomas L. Woodruff, and endorsed by the said Elias D. Woodruff, and discounted at any bank in this state"—in other words, the mortgage was given as a mere security for endorsements made and to be made. The bank held the mortgage by assignment as security for two promissory notes, made and endorsed subsequent to the date and registry of the mortgage. The immediate subject of controversy in the cause was a question of priority between this second mortgage of the bank and a prior mortgage given to the trustee of Mrs. Woodruff, and which had been satisfied of record. Very able and experienced counsel conducted the cause against the bank. The case was earnestly contested, both in the Court of Chancery and in the Court of Appeals, and yet no doubt appears to have been suggested touching the validity of the mortgage or of its registry. Had the question been deemed

an open one, it certainly would have been agitated. The same point was incidentally discussed, and somewhat considered in this court, in the recent case of *Kent and others* v. *Ely, Clapp and Bowen,* but there was no diversity of sentiment in the court upon the point. It was conceded that a mortgage or a judgment, independent of statutory provision to the contrary, was a valid security for future advances. I think it must be regarded as a settled question, in this state as well as elsewhere, that a mortgage given for future advances is valid, and that the registry of such mortgage entitles the holder to priority over subsequent registered encumbrances under the provisions of our registry laws, at least for all advances made prior to such subsequent lien being acquired.

2. It is urged that the mortgage of Thomas Fleming is released by being included in the claim presented to the assignees. The statute provides, "with respect to the creditors who shall come in under the assignments, and exhibit their demands for a dividend, they shall be wholly barred from having afterwards any action or suit at law or equity against such debtors or their representatives." The design of that enactment was not to affect any security in the hands of the creditor, but simply to relieve the debtor from all personal liability for debts upon which the creditor *accepted or demanded a dividend.* But admitting the provision to bear a different construction, has the creditor demanded a dividend upon his mortgage debt, so as to subject him to the loss of his security? The statute expressly provides for the priority of mortgage debts (§ 1). It authorizes the assignees to redeem all mortgages and conditional contracts. The assignment does not impair the mortgage security. It is well settled at this day that the mortgage creditor is entitled to have the mortgage debt first satisfied out of the proceeds of the sale of the mortgaged premises, and if that prove insufficient, he is entitled to come in as a general creditor for a dividend upon the balance. But,

unfortunately, the statute has provided no mode in which that object shall be accomplished, unless the assignees see fit to redeem the mortgage. The creditor is required to present his security within a limited time—too soon to allow him to foreclose the mortgage and ascertain the value of the security. He may not sell the security, as may be done under the English bankrupt law. He cannot safely deduct the amount of the mortgage debts from his claim, for the value of his security may be doubtful, and may prove worthless. The best and safest, if not the only course, so far as I am aware, that the creditor can adopt is the very one pursued by the creditor in the present instance, to present his entire claim to the assignees, specifying the extent and nature of his security. The claim is thus placed in the hands of the assignees to have the right settled agreeably to law. Whether he is entitled to a dividend upon his whole debts, and to have the mortgage applied to the satisfaction of the deficiency, or whether he can only claim a dividend on the balance after exhausting the security, he virtually asks that his rights be protected. It is perfectly clear that the creditor, by presenting his claim, never intended to release his security, and it would be a peculiar exercise of the equitable power of the court to hold that a creditor, in the honest exercise of due diligence to secure his claim under the guidance of judicious and experienced counsel, should be held virtually to have released it.

Nor do I think there is more force in the suggestion, that the mortgage debt is released by the will of the testator. Looking either at the plain import of the terms of the will, as they appear in the instrument itself, or examining them in connection with the situation of the legatees and the circumstances in which the testator was placed, the intention is free from all doubt. It is only by the application of technical rules, or by search for recondite and possible meanings in disregard of the plain and natural import of the will, that any real doubt can be raised as to the testa-

tor's meaning. The testator obviously intended to do precisely what he has done, *viz.* to instruct his executors to prosecute no suit or claim against his unfortunate and ruined son for any debt that he might owe, but to prosecute the proceedings commenced against the estate assigned by him for the benefit of his creditors. Clearly the estate assigned included the mortgaged premises. The technical destinction, that the estate assigned was only the equity of redemption, not the land itself, would never enter the imagination of the testator. When land is sold or assigned subject to mortgage, in law, as well as in the understanding of every man, when not dealing with technicalities or speaking with strict legal precision, the land passes subject to the mortgage, and not a mere equity.

Nor does the reference to "proceedings commenced" at all qualify the import of the testator's direction. If he had been apprised of his legal rights by his counsel, he knew that he must receive the amount secured by the mortgage, either by its redemption by the mortgagors or in some other mode, before he could receive a dividend upon his claim, as presented to the assignees. That was the proceeding which had been adopted to secure the debt, as far as practicable, from the estate assigned. In whatever mode the end was to be finally accomplished, the proceedings commenced looked to the recovery of the entire claim, as far as practcable, out of the estate assigned. To hold that the testator, while instructing his executors to prosecute a proceeding which he had himself instituted for the recovery of a debt intended by the very form of his instructions to release all security for its payment, is a highly improbable and unreasonable conjecture.

The mortgage was valid—the registry was operative—and the mortgage security is neither discharged by the mode in which the claim was presented nor by the will of the testator.

2 T*

The decree of the Court of Chancery should be affirmed with costs.

The decree of the Chancellor was affirmed by the following vote:

· *For affirmance*—CHIEF JUSTICE, Judges COMBS, CLAWSON, HAINES, SWAIN, VREDENBURGH, WOOD, CORNELISON, OGDEN, WHELPLEY, VAN DYKE.

*For reversal*—None.