ISRAEL C. WARD *vs.* ROBERT S. COOKE and wife and others.

1. A mortgage given to secure future advances, duly registered, is good not only as against the mortgagor, but is entitled to priority over subsequent encumbrances, for all advances made prior to *actual* notice of the subsequent encumbrance.

2. If the first mortgagee have knowledge of the existence of a second mortgage upon the estate, he cannot give further credit upon his prior mortgage, provided it is entirely optional with him whether to make further advances or not.

---

*Mr. Dodd,* for the complainant, contended that the evidence showed, that for all genuine, substantial purposes for which an open mortgage is given, the mortgage of the complainant was an open mortgage; that it was designed to secure future advances.

A mortgage for future indebtedness is valid. Will it take priority over a second mortgage?

The rule is that it will take priority for all advances prior to *actual* notice.

Actual notice was not given till the fall of 1860. All indebtedness to the complainant was incurred prior to that time.

. He cited 1 *Hilliard on Mortgages Ch.* 12, § 54; *Griffin* v. *Oil Company,* 3 *Stockt.* 49; *Bell* v. *Fleming's Exr's,* 1 *Beas.* 13; 11 *Amer. Law Reg.* 1.

*Mr. McDonald,* for defendant.

THE CHANCELLOR. The only controversy in this cause relates to the amount due upon the complainant's mortgage. The mortgage is given by Cooke and wife to the complainant, to secure the payment of a bond from Cooke to the complainant for $900, dated on the 1st of July, 1856, and payable in one year, with interest at seven per cent. The mortgage bears even date with the bond. A second mortgage upon the premises was given by Cooke and wife to Peter S. Talmage, to secure the payment of $1000, which remains unpaid.

The mortgagor, by his answer, alleges that there remains due on the mortgage of the complainant, but $286.93, with interest from the 11th of January, 1858. He states the origin and history of the transaction to be as follows:

Cooke purchased the mortgaged premises of Aaron E. Ballard, in 1851, for $1200. The purchase money was payable in four equal annual instalments of $300 each, from and after the 15th of November, 1851, bearing interest from 1st April, 1852, and was secured upon the premises. Three of these instalments were paid before the date of the complainant's mortgage, and at that date, 1st July, 1856, there remained due to Ballard $300, with some arrears of interest. About that date, Cooke borrowed of the complainant $500, and as well to secure the payment of that debt, as to indemnify the complainant against the claim of Ballard, which was an encumbrance on the premises, he gave his bond and mortgage for $900, which are the bond and mortgage set out in the complainant's bill. Ballard's mortgage having been subsequently cancelled, there remained due on the complainant's mortgage but $500. Of this sum, $250 was paid by a note or notes of Cooke to the complainant, which

were paid at maturity, thus leaving $250 of principal due upon the mortgage.

On or about the 8th of October, 1857, Cooke gave the complainant his promissory note at three months, for $286.-93, for the balance due on the mortgage, including principal and interest, up to the time of the maturity of the note. This balance was ascertained by an accounting between Cooke and the complainant, and there was a distinct understanding between them, that the payment of the note would be a satisfaction of the mortgage. This note is admitted to be unpaid.

The complainant and the mortgagor are the only witnesses that have been examined. They agree that the sum of $900 was not due to the complainant at the date of the mortgage, and that there was at that time a subsisting indebtedness of $500. The complainant alleges that the mortgage was given to secure that indebtedness, and also as a security for future advances. The mortgagor, by his evidence, re-affirms the statement contained in the answer. They agree substantially as to the amount of the debt now due and claimed by the complainant. They differ only as to the fact whether the debt is secured by the mortgage. The real question at issue is, whether the mortgage was given to secure future advances and liabilities, or whether it was given for the specific purpose stated in the answer. As the character of both witnesses is unimpeached, and as they are equally confident as to the truth of their respective statements, recourse must be had to the admitted facts of the case, and to the written evidence, to determine where the truth lies. The parties speak of transactions which occurred nearly seven years before they were called upon to testify, and it is not surprising that one or both of them should have fallen into error as to the real facts of the case.

The version of the transaction given in the answer is, that the mortgage was in reality given to secure the payment of $500, borrowed by Cooke of the complainant, and that it was

made for $900, on the demand of the complainant, in order to secure him against loss or damage on account of the unpaid balance of the Ballard debt, which was a prior mortgage upon the premises. Now it is evident that this could not have been the true nature of the transaction. Increasing the amount of the mortgage to the complainant, could have afforded no indemnity against a previous encumbrance upon the same premises. If the mortgaged premises encumbered by the Ballard debt, was not a perfect security for $500, it surely was no security for $900. Nor was the $500 rendered any more secure by increasing the amount of the mortgage to the complainant. The real nature of the transaction is clearly shown by the exhibits made by Cooke himself. The Ballard mortgage, as appears by endorsements upon it, was paid in full on the 28th of June, and was cancelled of record on the 30th of June, before the complainant's mortgage was given. The principal of the debt, $300, was paid by Cooke's note for that amount, endorsed by the complainant, dated July 1st, payable six months after date, with interest. This note was probably post-dated and delivered to Ballard on the 28th of June, when he acknowledged the receipt of the mortgage debt. The small arrear of interest on the mortgage, about $12, must have been paid at the same time by Cooke. At any rate, the principal and interest of the Ballard mortgage were satisfied in full before the complainant's mortgage was given. It was obviously given therefore, not as an indemnity against the Ballard debt, but as security for advances which the complainant might thereafter be compelled to make, as endorser of the note for $300, given by Cooke to Ballard. This accounts for an addition of $300 to the prior indebtedness of $500, making the mortgage $800. But why should it have been made $900? Cooke says, by way of indemnity; but indemnity against what? Not against the Ballard debt, that was extinguished. Not against interest that might accrue upon the $300 note, for the mortgage bore interest as well as the note, and the same rate of interest. It could

have been given only, as the complainant alleges it was, as a security for future advances. All the circusmtances of the transaction are corroborative of this view of the case. Cooke, at the date of the mortgage, was not a borrower from the complainant. The $500 indebtedness, for which the mortgage was given, was not loaned at that time. It was, as Cooke admits, a subsisting indebtedness, previously incurred for advances made at different times. Ballard appears to have been pressing for the payment of his debt, which Cooke was unable to meet. The evidence of this fact is, that he gave, in payment of a mortgage debt, bearing but six per cent. interest, his note at six months, with the complainant's endorsement, bearing interest at seven per cent. Cooke applied to the complainant to become his endorser. The complainant consented, upon Cooke's agreeing to give him a mortgage for past as well as future liabilities and advances. It was not, therefore, as the answer alleges, a mortgage given to secure a specific debt of $500, and as mere indemnity against the Ballard mortgage, but an open mortgage, designed as a security for future, as well as past advances. If there were room for the possibility of a doubt upon this subject, it is dispelled by testimony furnished by the parties themselves. The advances claimed to have been made by the complainant upon the security of that mortgage, were made at various times from 1855 to 1860, in amounts varying from $17 to over $200. Many of them were made at a time when the borrower was deeply embarrassed, and his property heavily encumbered by judgments and mortgages. The circumstances leave no room to doubt the truth of the complainant's evidence, that he never would have made those advances, but upon the security of the mortgage. The defendant testified orally, that he did not understand the mortgage to be an open mortgage, or that the money was advanced upon its security. He was very emphatic in his testimony upon this point, and doubtless stated what he believed to be the truth. But he is confronted by his own written testimony. In a note addressed

by him to the complainant, he says: "Will it not be possible for you to help me to raise the amount of the note due to Dennis on Saturday? I cannot at present meet it, or even any part of it. You have *an open mortgage on the Ballard place,* which will amply pay it. I hope soon to effect some arrangement that will relieve me from my embarrassment." It is testified by Cooke, that the mortgage in question is the only mortgage ever held by the complainant upon the Ballard place. The note, of necessity, refers to the mortgage now in question, and is admitted to have been written by the defendant. His recognition of the genuineness of the note is very remarkable. In answer to the question, whether the note was written by him, the witness says: " If this letter was presented to me without any reference to its contents, and I was asked whose handwriting it was, I would say it was mine, but if it was read to me, I should say it was not mine. I can hardly believe it to be mine, and yet I would be sorry to say it was not my handwriting." It would be gross injustice to the witness to suppose, that for the purpose of obtaining a loan from the complainant, he falsely represented the mortgage to be what he knew or believed it was not. The witness, with honest indignation, repudiates this idea. It is but justice to him to believe that he wrote, as well as testified, conscientiously. But it is apparent that he testified quite too confidently, laboring under a grave mistake, or in utter forgetfulness of the real character of the transaction. Considering the character of the witness, it furnishes a striking illustration of the impolicy and danger of permitting mortgages given for specific sums, without stating their real character, to stand as security for future advances.

There is another point upon which the allegations of the answer are erroneous, and the witness is mistaken in his testimony. It is alleged in the answer, and Cooke testifies, that he paid off the Ballard debt, leaving the complainant's mortgage as security only for $500. That of this sum, he gave his note for $250, and that on the 8th of October,

1857, he gave his note for $286.93, in full of the balance of principal and interest due on the mortgage. The last note is admitted to be due and unpaid, but the former notes he alleges were taken up and paid by him, and produces the notes as evidence of the truth of his statement. There is no question that these notes were given, and were, as the witness alleges, taken up by himself. But how was it done? If his note was taken up by renewal, or with a substituted security, or funds furnished by the complainant, although his note was paid, the mortgage was not satisfied. The security remained for the renewal, or the substituted security. The witness admits that he paid the note given for the Ballard debt, by the aid of the complainant. The history and connection of the several securities is not clearly traced, but it is clear that the indebtedness was not paid, as stated in the answer. All question upon this point is removed by the evidence of the parties. The complainant furnishes a list of securities for moneys, amounting with interest, to $1063.32, which he alleges was furnished to Cooke upon the security of the mortgage, and which he claims to be paid out of it. With the exception of $50, which he claimed as a credit on one of the notes, Cooke admits his indebtedness upon those securities. He also admits, that if the mortgage was an open one, the principal and interest due upon those securities, would be the amount covered by it. As between the mortgagor and mortgagee, this closes the controversy.

A mortgage given to secure future advances, duly registered, is good, not only as against the mortgagor, but is entitled to priority over subsequent encumbrances, for all advances made prior to notice of the subsequent encumbrance. *Griffin* v. *New Jersey Oil Co.*, 3 *Stockt.* 49; *Bell* v. *Fleming's Ex'rs*, 1 *Beasley* 13; *Robinson* v. *Urquhart*, *Ibid.* 515.

And the notice must be an *actual*, not a *constructive* notice. This was regarded by the Chancellor, in *Bell* v. *Fleming's Ex'rs*, as not altogether a settled question. There is, undoubtedly, some conflict of authority upon the point. In

Pennsylvania and Ohio it has been held, that the registry of the second mortgage is notice to the first mortgagee, not to make further advances upon his mortgage. *Ter-Hoven* v. *Kerns,* 2 *Barr* 96; *Parmentier* v. *Gillespie,* 9 *Barr* 86; *Spader* v. *Lawler,* 17 *Ohio R.* 371.

In *Shirras* v. *Caig & Mitchell,* 7 *Cranch* 51, the Supreme Court of the United States held, that a mortgage given for future advances was a security for all advances made, and liabilities incurred, upon its faith, prior to the receipt of *actual notice* of the subsequent title. And this view is sustained both by principle and by the current of authority.

Chief Justice Redfield, in a very full and clear exposition of the principles and authorities upon the subject of mortgages for future advances, says: "The general view of the American courts, and the uniform declaration of the English courts, as far as we know, is, that nothing short of *notice in fact* of the subsequent mortgage will have the effect of postponing advances, made by the first mortgagee, in favor of the intervening security. It is expressed under various forms of language, but the result of the whole is, that if the first mortgagee have knowledge of the existence of a second mortgage upon the estate, he cannot give further credit upon his prior mortgage, provided it is entirely optional with him, whether to make further advances or not. This has often been declared by judges and text writers, and may now be regarded as settled law." 11 *Amer. Law Reg.* 19; *Trusccott* v. *King,* 6 *Barb.* 346; *Craig* v. *Tappin,* 2 *Sandf. Ch. R.* 78; 1 *Hilliard on Mortgages, Ch.* 12, § 71 *et. seq.*

The complainant's priority is not affected by the registry of the mortgage. Actual notice was not given before the advances were all made.

It will be decreed accordingly.