LANAHAN et al., administrators of John C. Grafflin, deceased,

*v.*

WALTER E. LAWTON et al.

1. In the absence of direct evidence of the consideration of a mortgage—the mortgagor having absconded and the mortgagee being dead—it will be inferred from the fact of the indebtedness from the mortgagor to the mortgagee at the date of the mortgage, and its continuance and increase, that the mortgage was given to secure such indebtedness and such future indebtedness as might arise.

2. After the death of the mortgagee, where the mortgagor has absconded, it will not be presumed from the bare fact of non-record of the mortgage that the intention of the mortgagee was to enable the mortgagor to obtain commercial credit on the strength of being owner of the property.

3. The issuing of an attachment by a mortgagee against the mortgagor on the mortgage debt, and the obtaining of a judgment thereunder, is not *per se* a waiver of the mortgage lien.

4. A mortgage to secure repayment of future advances is good for all money advanced under it up to such time as some third person acquires an interest by mortgage, conveyance or judgment in the mortgaged premises, and notice thereof is given to the holder of the prior mortgage.

Lanahan v. Lawton.

5. Extracts from depositions are inadmissible in evidence unless the whole deposition is before the court.

6. On a bill to foreclose a mortgage given to secure advances, where complainant holds corporate shares as collateral, he will not be required, as against other creditors, first to exhaust his remedy against such shares, but will be allowed to transfer them in blank, and deposit them in court.

7. The rule is settled in New Jersey that an attachment does not take precedence over a previously executed but unrecorded mortgage.

Heard on bill, answers, cross-bill, replication and proofs.

*Messrs. Vredenburgh & Garretson,* and *Mr. Gornell* (of Baltimore), for the complainants.

*Messrs. Bedle, Muirheid, McGee & Bedle, Jr.,* for the Commercial National Bank.

*Mr. William A. Lewis,* for the Central Trust Company.

*Mr. Frederic W. Ward,* for the United States Trust Company.

PITNEY, V. C.

This is a bill to foreclose. It is founded on a mortgage executed by the defendant Walter E. Lawton to the complainants' intestate, John C. Grafflin, to secure $150,000 in three years from its date. It is dated on the 5th of July, 1884, and was recorded on the 18th of March, 1887, nearly three years later.

The defendant Lawton does not appear, and a decree *pro confesso* went against him.

The other defendants who have answered are judgment creditors of Lawton, under proceedings in attachment begun March, 17th, 1887, one day before the record of complainants' mortgage, and set up several defences, which may be classified as follows: *First.* That the mortgage was never delivered by Lawton to Grafflin. *Second.* That neither $150,000 nor any other sum was advanced by Grafflin at the date of the mortgage to Lawton. *Third.* That, if ever delivered, it was kept off the record until

Lanahan v. Lawton.

the date of its record, for the purpose of enabling Lawton to
obtain mercantile credit on the strength of the unencumbered
ownership of the property which it covers, and that the indebt-
edness of the several defendants was incurred as a consequence,
in the belief that Lawton was the owner of the premises without
encumbrance. *Fourth.* That if given to secure a running account
for present and future advances, nothing is due on that account.
*Fifth.* That the suits which resulted in the several judgments
held by the defendant were commenced by foreign attachment,
which was levied on the 17th of March, 1887, one day before
the complainants' mortgage was recorded, and thus the defend-
ant lost his priority. *Sixth.* That complainants' testator must be
held to have waived any rights he had as a mortgage creditor by
himself issuing an attachment on the 19th of March, 1887, and
attaching the same premises, and in coming in as a creditor under
the attachment of March 17th, and obtaining judgment for the
only debt which he has against Lawton.

The facts are, that Mr. Grafflin was a wealthy manufacturer,
residing and engaged in business at Baltimore, and that Lawton
was a dealer in fertilizers, living and doing business in New
York. For some time prior to the date of the mortgage in ques-
tion Grafflin had been in the habit of making advances of money
to Lawton, and also of loaning him commercial paper which he,
Grafflin, had taken in the course of business, and which he
loaned to Lawton before its maturity, and which Lawton pro-
cured to be discounted for his own use and benefit. On the 30th
of June, 1884, six days before the date of the mortgage, Mr.
Lawton was indebted to Mr. Grafflin in the sum of $56,689.82,
for advances in cash and interest up to that date, and in nearly
$50,000 for commercial paper before that time loaned to Mr.
Lawton.

Lawton, in addition to his dealing in fertilizers, had purchased
a large tract of land in Bergen county, which he had devoted, or
was about to devote, to the purpose of making brick, and on the
11th of July, in the absence of Mr. Grafflin, he went before a
commissioner of deeds for New Jersey residing in New York,
and executed the bond and mortgage in question. How it came

into the possession of Mr. Grafflin does not appear, but it does appear in the most satisfactory manner that it did come into his possession shortly afterwards without being recorded, and was by him placed among his valuable papers and preserved until the 17th of March, 1887, when, upon the receipt by him of a telegram from Lawton's confidential clerk and cashier that Lawton had absconded, he, Grafflin, took the bond and mortgage from the safe, proceeded directly to New York, and the next day, March 18th, caused the mortgage to be recorded in the Bergen county clerk's office. In the meantime, and on the 1st of January, 1885, the balance due from Lawton to Grafflin had increased to about $135,000, and remained, with some fluctuations, at about that amount until the time the mortgage was recorded.

On the 17th of March, 1887, the Commercial National Bank, one of the defendants, issued an attachment out of the circuit court of the county of Bergen against Lawton, and the sheriff attached the mortgaged premises. On the 18th of March, Grafflin, as above stated, recorded his mortgage, and on the 19th he caused an attachment against Lawton to be issued out of the same court. Whether, under these two writs, any other property besides the mortgaged premises was attached, does not appear.

The object of the independent attachment by Grafflin is manifested by what followed. On the 5th of April, 1887, he filed a bill in this court to set aside a conveyance which had been made by Lawton on the 1st of March, 1887, and recorded on the 5th of March, 1887, to the New York and New Jersey Brick Company, and a mortgage given by the brick company, of the same date and record, to the Metropolitan Trust Company to secure the sum of $950,000; and such proceedings were had in that suit that on the 9th of June, 1890, this court decreed that the conveyance and mortgage just mentioned were null and void and should be set aside; and, further, that the attachment issued at the suit of the Commercial National Bank was a valid lien and encumbrance upon the premises, and that when the premises were sold by the auditor in attachment the sale should be subject to the mortgage made by Lawton to Grafflin.

The judgment creditors, defendants in this suit, who defended, were not parties to that bill.

Grafflin died in August, 1888, and letters of administration, with the will annexed, were issued to the complainants, and they were substituted as complainants in the suit of *Grafflin v. Lawton,* just mentioned, before decree, and after decree in that suit filed this bill.

In the attachment suit commenced by the Commercial National Bank, in which Grafflin applied as a creditor, he obtained judgment for $135,407.63.

Lawton has never been heard of since he absconded, which circumstance, together with the death of Grafflin, leaves the case bare of any evidence as to what the understanding was between the parties with regard to this mortgage, or why it was not recorded.

Mr. Grafflin's confidential clerk, a Mr. Rogers, was sworn as a witness. He kept the account of the loans made by Grafflin to Lawton. He also had the custody, for part of the period between its date and record, of the mortgage and accompanying bond in question. He has no personal knowledge of how these papers were passed from the hands of Lawton to Grafflin, nor upon what understanding. Mr. Grafflin's brother-in-law, one Keener, who was acting for him in some matters about that time, is also dead. Grafflin himself was at the time quite ill.

This state of the evidence leaves the object of the mortgage altogether a matter of inference, but I think that the established facts of the indebtedness from Lawton to Grafflin at the date of the mortgage, and its continuance and increase, leads fairly and legitimately to the inference that the mortgage was given to secure that indebtedness and such future indebtedness as might arise, and justify me in finding so as a matter of fact.

The absence of Lawton and the death of Grafflin account for the absence of any evidence to show why the mortgage was not placed on record. The proof shows that Mr. Grafflin was quite ill about that time, and he must have relied upon Mr. Lawton to make him secure; and, although Mr. Rogers is quite positive that Mr. Grafflin himself handed him the bond and mortgage

·for deposit among his valuable papers some time not very long .after their date, it is not difficult to believe that Mr. Grafflin did not observe that the mortgage had not been recorded, but relied, with misplaced confidence as the result has proven, upon his friend Lawton to do everything that was necessary to make him secure. Be that as it may, there is not the least evidence to show that the instrument was kept off the records intentionally and knowingly for the purpose of enabling Lawton to obtain commercial credit on the strength of being the owner of unen- ·cumbered property. To so presume, from the bare fact of non-record, would be to presume in favor of fraud instead of against ·it. Besides, it is highly improbable that in so large a transaction Mr. Grafflin would have taken so great a risk. It is much ·easier to believe that the non-recording of the instrument escaped .his attention.

There is evidence that, as to one judgment creditor, defendant .Lawton did obtain credit on the strength of being the owner of the land in question free of encumbrance, but there is not· the least particle of evidence that Mr. Grafflin had any knowledge ·of any such representation or conduct on the part of Lawton, and I do not see how he can be held responsible for it.

With regard to the attachment being issued and levied before ·the mortgage was recorded, that point is *res adjudicata* in this ·state. The case of *Campion* v. *Killé, 1 McCart. 229, 2 McCart. 476*, with the cases there cited, is conclusive in favor of complainants on that point.

It follows that the complainants are entitled to the benefit of their mortgage as a lien prior to any of the judgments under the .attachment, unless the conduct of their testator, in himself issuing .an attachment and presenting his claim under the first attachment and obtaining a judgment thereon, can be held as a waiver ·of his lien under his mortgage.

It is well settled by a long series of decisions in New Jersey, ·that the obligee of a bond secured by a mortgage does not waive .his mortgage lien by suing at law upon his bond and recovering ·judgment and issuing execution and levying upon the mortgaged ·premises. It is, however, inequitable for the mortgagee to pro-

ceed to a sale of the mortgaged premises,. and this court will restrain him in so doing at the instance of the owner of the equity. The cases in this state are collected and commented upon by Chancellor Runyon in *Lydecker* v. *Bogart*, *11 Stew. Eq. 136*. It follows plainly that, by merely issuing a general attachment against the defendant upon the debt secured by his mortgage, Mr. Grafflin did nothing to disturb his lien under the mortgage. While it does not appear that any other property besides the mortgaged premises were seized under that attachment, the contrary does not appear ;. and it was perfectly proper for him to issue the attachment as he did,. and also to come in as a creditor under the previous attachment, with the view of getting the benefit of any other property which might be found and subjected to the lien of the process. Besides,. the position of a plaintiff in attachment gave him a standing in this court as the complainant in a suit to set aside the previous conveyance and mortgage, under the rule established in *Hunt* v. *Field*, *1 Stock. 36*, and *Williams* v. *Michenor*, *3 Stock. 520*. It follows that nothing that the complainant has done can be construed as either a discharge or waiver of his lien under the mortgage. The apparent hardship of this result is much softened by the circumstance that the mortgagee proceeded,. unaided by the defendants, to bring suit and remove out of the way the fraudulent conveyance made by Lawton, which,. unassailed, was a complete bar to any success on their part.

Complainant is entitled to a decree.

On the argument the point was made that the mortgage can only stand as security for the amount which was due the mortgagee at the time it was made and delivered, and which, it is insisted, was only $56,689.82, and that against that sum should be credited all the payments which were made by Lawton on account after that date, which amount to upward of $30,000. I cannot adopt that view. The mortgage was evidently given to secure the amount due at its date and also future advances ; and it is perfectly well settled in New Jersey that a mortgage for future advances is good for all the money advanced under it up to such time as some third party shall have acquired an interest

Lanahan v. Lawton.

by mortgage, conveyance or judgment in the mortgaged premises, and notice thereof be given to the holder of the mortgage to secure advances. No defence of any such lien or interest in this case prior to the 17th of March, 1887, is made, and the complainants did not claim for any moneys advanced after that time. In fact, none were advanced.

On the examination of Mr. Rogers before a commissioner in Baltimore, counsel for one of the defendants, in the course of cross-examination, interpolated into his questions what purported to be extracts from the testimony of Mr. Grafflin, taken in some suit in Maryland, in which he, Grafflin, was a defendant. Objection was made to that mode of examination. The deposition itself, if any such there be, was possibly competent evidence, but it was not offered. Counsel for one of the defendants referred to these supposed extracts from the evidence of Mr. Grafflin as evidence in this cause, but they cannot be so construed. There is not the least particle of proof before the court that Mr. Grafflin ever swore to anything of the kind, and it would be highly improper to pay any attention to mere extracts from a deposition without having the whole before the court.

One other matter remains. It appears that complainants hold as collateral to Lawton's indebtedness to them certain shares of stock in an incorporated company, and the defendants contend that they are not entitled to a decree in this court until they shall have exhausted their remedy by a sale of these shares of stock. The proof shows that the shares of stock are probably of very little value ; but, however small their value may be, the equity claimed by the defendants was not seriously resisted by the complainants' counsel at the argument, and, as I recollect, he offered to have them so appropriated. It does not seem to me necessary that the proceedings in this cause should stand until those shares are sold. The result may be attained by placing them within the power of the court, and upon depositing with the clerk of the court the certificate, with a transfer in blank, executed by the complainants, a decree will be made.

There will be a reference, if the defendants desire to dispute the amount complainants claim to be due, but it hardly seems

to be worth while in face of the fact that the auditor in attachment passed upon the complainants' claim, and judgment has been rendered upon it in the attachment suit, to which all the defendants were parties.