On February 10th, 1927, the defendants Anderson, Moskowitz and Bertschy were appointed receivers of a corporation known as the Economy Housing and Construction Company, and were directed by a subsequent order to complete *Page 9 
the building of a number of small dwelling houses in Bergen county. In furtherance of that object, permission was given them to issue and negotiate their official certificates. Only one certificate for a small sum has been converted into cash.
Before the appointment of the receivers the corporation which they succeeded executed its bond and mortgage to the United States Mortgage and Title Guaranty Company in the sum of $63,600, which was to secure the repayment of advances to be made in the then future. At the time of the appointment of the receivers only a part of the mortgage money had been paid to the defunct corporation. There is now still due under that mortgage the sum of $29,600. In the proceeding in which they were appointed the receivers have secured an order directing the Mortgage and Title Guaranty Company to pay over the balance just mentioned, and have also secured an order for the sale of the mortgaged premises free from all liens except that of the mortgage of the Mortgage and Title Guaranty Company. It is this order which is now under attack.
The complainants are the holders of a mortgage in the expressed amount of $31,000, which is a lien upon the lands ordered to be sold, and which is the only property that was owned by the Economy Housing and Construction Company at the time of its demise. The receivers have brought in question, under the eighty-first section of the General Corporation act, the legality of the complainants' mortgage (these complainants now admit that their mortgage is security for less than its face value), and no one denies that the property is of a "character materially to deteriorate in value pending the litigation."
The complainants were not parties to the receivership proceeding and were not given formal notice of the application for permission to sell receivers' certificates. Their application now to be decided is for the impounding in the hands of the court of the $29,600 to be paid by the United States Mortgage and Title Guaranty Company; their lien, if any, to attach thereto. No portion of this sum should be used to retire the receivers' certificates already referred to. Permission to negotiate that instrument having been given without *Page 10 
notice to the complainants, it was expressly provided that the same should be subject to the mortgage held by complainants. But it is not for that purpose that the receivers desire to employ the $29,600 fund. It is for the purpose of extinguishing taxes and mechanics' liens.
The complainants maintain that their mortgage (admittedly inferior to the mortgage of the United States Mortgage and Title Guaranty Company as to all sums advanced thereunder prior to the filing of this bill) is superior to the lien of the mortgage company's encumbrance as to any advances now to be made. I am unable to bring my mind in accord with theirs. They do not deny the effect of the adjudications in such cases as Bell v.Fleming's Exrs., 12 N.J. Eq. 490; Jacobus v. Mutual BenefitLife Insurance Co., 27 N.J. Eq. 604; Central Trust Co. v.Continental Iron Works, 51 N.J. Eq. 605, and Micele v.Falduti, 101 N.J. Eq. 103, to the effect that mortgages for future advances operate from the time of recording, although the advances may not be made until a later date. The undoubted rule adopted in this state is as expressed in 3 Pom. Eq. Jur. §1119. The open mortgage is superior, to the extent of advances made, until actual notice is obtained of the intervention of a later encumbrance, but after such notice is received it will prevent any further advances taking precedence of the junior mortgage. Ward v. Cooke, 17 N.J. Eq. 93. It seems to me that even this statement of the rule goes too far in favor of the junior encumbrancer. The decisions of "most able courts" giving absolute preference to the open mortgage for advances made even after actual notice seem to me to breathe the true essence of the spirit of equity for the rule, expressed by Professor Pomeroy in the above-mentioned section and the cases cited by him. But the mortgage of the complainants does not come within even our rule. There is here presented an apt and characteristic exhibition of the benignity of the equity system in the application of its various principles and rules. To permit the complainants to take advantage of this doctrine would be a miscarriage of justice that is unnecessary because of the necessity for the application of the doctrine of equitable estoppel. When the complainants *Page 11 
subordinated their mortgage to the new one they led everybody to believe that the new mortgagee might advance $63,600, and that the owner of the land might receive the same, and, acting upon that agreement, the mortgagee has made large advances which it would not otherwise have paid, and it has resulted in luring the mortgagor and its successors into the expenditure of a large sum of money which would have well-nigh gone for naught if the complainants could have compelled the other mortgagee to refuse the balance upon which the mortgagor relied, or else it would work a grave prejudice to the rights of innocent third parties who, in reliance upon the subordination agreement, have performed labor and supplied materials of great value. It is too late now for the complainants to rescind their contract. A ferryman will not be allowed to change his mind in the middle of the current to the disadvantage of his passengers for hire. The complainants say that this, while generally true, has definite limitations, and that the filing of this bill operated to extinguish the consequences of the contract between the United States Mortgage and Title Guaranty Company and the predecessor of the receivers.
Just why this should be so is not made clear. The mortgage held by the complainants is anterior in date to that of the mortgaged company, but before the latter was executed and delivered the complainants solemnly subordinated their existing mortgage to the one to be accepted by the title company. There can be no question, under the decisions mentioned above, that the execution of the latter's mortgage created a contractual relation between that company and the Economy Housing and Construction Company. That instrument provided for the final advances to be made upon the completion of the building program into which the United States Mortgage and Title Guaranty Company money was to go. Astute counsel who argued this motion for complainants will not deny that this placed the title company under a contractual obligation to pay immediately upon the completion of the construction.
This being so, how can it be argued that the junior encumbrancers could, by any act, singly upon their part, cut *Page 12 
down or impair the lien of the paramount encumbrance, or, which amounts to the same thing, diminish the amount that the mortgagee had agreed to advance? Their answer to this is, that by the filing of their bill they fix the respective rights and obligations of all the parties having any estates or rights in and to the mortgaged premises. This, of course, begs the question. When they agreed that the mortgage then to be given by the United States Mortgage and Title Guaranty Company should be prior to their then subsisting mortgage they must have known, and must have consented to the carrying out, of the terms of the new mortgage in its entirety. Any other decision would lead to hopeless disaster upon the part of an unfortunate mortgagor. For example, to use the facts in the present case, the complainants' mortgage was only for a term of six months, and it is said by them that there was a collateral oral agreement with the mortgagor that their mortgage should be paid out of the proceeds of the construction loan mortgage. Now, see what has happened: The period of six months having expired, the mortgage of the complainants is due. The plans for building the houses upon the mortgaged land has not been carried through as was anticipated. In this unfortunate posture of affairs the complainants would frustrate the successors of the mortgagor from completing the agreement with the mortgagee and thereby realizing a completed structure, more in value as a merchantable product than the amount of money necessary to complete it, unless there has been gross waste, and there is nothing to so indicate. Counsel has said in arguing that receivers are notoriously prodigal in making contracts in their official character. I do not understand this to be so. I have known receivers who were far more diligent in their trust transactions than when treating privately.
The complainants express a grievance by reason of not having been given notice of the application to sell, and charge that they have been deprived of their day in court. No objection has been raised by the receivers against the regularity of this motion. Whether the complainants have been guilty of laches (because they had knowledge of the motion) or not, the fact remains that they have now had their day in court, *Page 13 
represented by counsel, and heard in the fullest argument. Their supplication that final distribution of the balance to be advanced under the title company's mortgage shall be withheld until after final hearing under their bill to foreclose, discloses not one disputed fact, and, therefore, the matter is as clearly before the court now as it ever could be. Ample opportunity has been afforded to allege everything that might lead to a factual controversy. Nothing has been presented of this nature, and the motion has been argued twice, the second time by special counsel who, as already related, has been heard at the greatest length.
There is also raised the question of the effect of an assignment given by the Economy Housing and Construction Company in favor of the complainants against the unadvanced balance of the mortgage money, and notice of which has been given to the United States Mortgage and Title Guaranty Company. This is not properly before me. If it is a valid subsisting charge against the fund, I have no doubt that the receivers will consent to, and the United States Mortgage and Title Guaranty Company will insist upon, a settlement of this matter before the other is consummated. Otherwise, I apprehend the complainants will have a full and adequate remedy.
The complainants' motion should be denied. *Page 14