THE CENTRAL TRUST COMPANY, trustee, appellant,

*v.*

THE CONTINENTAL IRON WORKS et al., respondents.

A mortgage dated July 19th, 1889, delivered the same day and recorded July 22d, 1889, was given by a gas company to the Central Trust Company, as trustee, to secure bonds to the amount of $350,000. No bonds were issued or sold until September 20th, 1889. The gas company commenced the erection of a building upon the mortgaged premises July 29th, 1889, before the issue of any bonds.—*Held*, that the holders of the mortgage bonds have a lien relating to the time when the mortgage was recorded, and that the mortgage is an encumbrance upon the mortgaged premises prior to the claims for mechanics' liens.

On appeal from that part of the decree in the above-stated cause advised by Vice-Chancellor Van Fleet which declares that the lien claims of Bartlett, Hayward & Co., the Continental Iron Works, and August Bretthauer are encumbrances on the building and curtilage " prior to the mortgage of the complainant, or any bond or debt, or interest secured, or intended to be secured, by said mortgage."

*Messrs. E. A. & W. T. Day* and *Mr. John P. Stockton,* for the appellant.

*Mr. Frank Bergen* and *Mr. William D. Edwards,* for the respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

This writ is prosecuted for the foreclosure of a trust mortgage made by the Metropolitan Gas Light Company, of Elizabeth, New Jersey, to the Central Trust Company, of New York, trustee, to secure seven hundred bonds of $500 each. The mortgage is dated July 19th, 1889, delivered the same day and recorded July 22d, 1889.

The mortgage is in the usual form of mortgages by corporations to secure the issue of bonds. It recites the resolution of the board of directors of the company, authorizing the issuing of the bonds and the execution of the mortgage to secure the same.

The total amount of bonds authorized to be issued were sold and delivered to purchasers between September 20th, 1889, and January 31st, 1890.

Lien claimants claim priority over this mortgage. The excavation for the building erected upon the mortgaged premises was commenced July 29th, 1889, being a date prior to the sale of any of the mortgage bonds.

By the decree below, priority was given to these lien claims for work done and materials furnished for said building.

In this state, mortgages for future advances operate from the time of recording, although the advances may not be made until a subsequent date, and they have priority for all advances made before actual notice of subsequent encumbrances. *Bell* v. *Fleming's Executors, 1 Beas. 490 ; Ward* v. *Cooke, 2 C. E. Gr. 93 ; Platt* v. *Griffith, 12 C. E. Gr. 207 ; Jacobus* v. *Mutual Benefit Life Insurance Co., 12 C. E. Gr. 604.*

In *Platt* v. *Griffith* there was a verbal agreement between the parties to the mortgage that it should secure future advances. The lien claims accrued before the advances under the mortgage were made, but the court held that the mortgage was entitled to priority for the full amount advanced.

In the *Jacobus Case, supra,* the mechanics' liens attached May 28th, 1870. The mortgage was dated May 2d, 1870 ; recorded, but not delivered until July 7th, 1870.

This court held that, although there was no delivery of the mortgage or advances made under it until after the lien claims had arisen, the encumbrance of the mortgage would relate to the date when it was recorded, and thus give it priority over the liens. In that case an agreement had been made to loan the money secured by the mortgage prior to its delivery, but I do not perceive how this fact could place the mortgagee in that case in a position of superior equity to that occupied by these bondholders, who are secured by a mortgage to trustees for the money they should thereafter advance upon it. It was made for the expressed purpose of securing money to be advanced, and differs only in the fact that the future bondholders being unknown, the agreement to advance could not be made with them in person. It was, in substance and effect, made with the trustees named in the mortgage for the benefit of such bondholders, and equity should so regard it. They hold a stronger position than that in the *Jacobus Case,* in this respect: the mortgage to their trustees was made, recorded and delivered prior to the commencement of the building, while in the *Jacobus Case* there was no delivery until after the liens had attached.

Mr. Justice Depue, who delivered the opinion of a majority of the court in the *Jacobus Case,* said that the object of the

equitable doctrine adopted by the courts was to give effect to the intention of the parties, and that where several acts are necessary to make a complete conveyance as between the parties to it, if justice requires it, the conveyance will be regarded as having been made at the first act, to which all subsequent acts will have relation. The mere agreement to advance money in that case gave, of itself, no equity to the mortgagee, because he could have receded from his agreement when another lien was permitted by the mortgagor to intervene before he actually made the advance. The ground of equity was that the parties had entered into a legal contract which was partly executed, and that parties having notice of such contract must be subordinated to it, as if it had been entirely completed. That is the same principle which applies in enforcing contracts for the sale of land specifically. With the reason which underlies the rule in the *Jacobus Case* in view, the case before us cannot be distinguished from it in principle. The maxim in equity is that what has been agreed to be done shall, for the advancement of justice, be regarded as done. This case is within that rule. The mortgage was given to secure money to be advanced for the purposes of the mortgagor by the purchasers of the mortgage bonds, and the intention of the parties announced substantially by the execution, recording and delivery of the mortgage can be effectuated only by treating the transaction as a whole by relation as of the date of the mortgage.

This gives it priority over the mechanics' liens for the full issue of the bonds, because neither the complainants nor the bondholders had actual notice of the subsequent encumbrances.

The commencement of the building was constructive notice only, and not actual notice of the lien claims.

This court, in the *Jacobus Case*, expressly decided that such constructive notice would not postpone the mortgage debt.

Aside from these adjudications, the bonds of corporations, secured as are these bonds, are dealt with in commercial transactions and are treated, almost without exception, by the courts as a class by themselves, not subject, in all respects, to the stricter rules which pertain between natural persons.

In *Claflin* v. *Railroad Co., 4 Hughes 12*, the question was whether bonds which were part of an issue secured by a first mortgage, but which remained unissued in the hands of the mortgagor, could be issued, after the making of a second mortgage and issue of bonds thereunder, so as to preserve a lien superior to the issue of bonds under the second mortgage.

Chief-Justice Waite, in maintaining the priority of the first mortgage bonds, said : " Here the bonds put out, while not for circulation as money, were intended as articles of commerce, to be bought and sold in the market and passed from hand to hand as current negotiable securities. They were to be used in trade. When in the hands of the company, their lien under the mortgage was suspended, but the moment they were out in the usual course of business, it again took effect as of the time when the mortgage was given. Any other rule than this would materially impair the marketable value of this class of instruments and tend to defeat the very object of their execution. The whole issue of such bonds must be treated as of the date of the mortgage, without regard to the time they were actually put out, unless the contrary is clearly expressed."

The like view was taken by the supreme court of Iowa in *Nelson* v. *Iowa Eastern Railroad Co., 8 Am. R. R. Rep. 82*. There, between the execution and recording of the mortgage and the issue of the bonds, a mechanics' lien attached to the mortgaged premises. The court of Iowa denied priority to the mechanics' liens, saying that : " If the purchaser of a bond in New York, in Amsterdam or London is bound to inquire whether the bond in fact was executed by the company contemporaneously with the execution of the mortgage, or whether, before the signing or the negotiating of the bonds, liens of laborers or materialmen may not have attached to the road, it is apparent that the value of these securities would be much depreciated, and all industries which depend upon the raising of means through negotiation would be paralyzed. The plaintiffs are affected with knowledge of the existence of the mortgage, and, seeing that the road had mortgaged all its future acqui-

.sitions, they could and should have protected themselves by refusing to sell the ties without payment or security."

In *Reed's Appeal, 122 Pa. St. 565,* where the lien of the mortgage was held to be dominant, a distinction is clearly drawn between mortgages to secure bonds to be put upon the market and dealt with in commercial circles, and a mortgage given by one man to another. The following is the language used by the court at page 573 of that case: "Where a mortgage is given to cover future advances of one man to another, it is not a matter of much inconvenience for the mortgagee to ascertain, from time to time, as he is called on for advances, whether there be intervening liens. But a different case is presented where a public improvement is undertaken, requiring the expenditure of large sums of money and the floating of a debt of great magnitude. The debt is necessarily divided into small parts and carried into different and distant markets. It would be out of the question to ascertain the state of the record or of the company's affairs each time a bond was about to be sold. If this were made the duty of purchasers it would prevent the sale of such securities altogether, or at least confine their purchase to such large concerns as could buy in bulk after due and careful inquiry; even then the facts would be open to doubt at every subsequent sale. Thus, their value would be entirely reduced."

The cases are referred to in *Jones Corp. B. & M.* § *205.*

If this well-established doctrine is shaken it will destroy the value of millions of securities of railroad and other corporations which have been negotiated on the faith of the priority of the mortgage which secures their issue.

In the case before us the lien claimants show no superior equity. They had full notice of the existence of the mortgage and the title which passed thereby to the trustee, and the purpose of the company to put the mortgage bonds upon the market for sale to *bona fide* purchasers without notice of the mechanics' lien. Charged with such knowledge, they took no active measures to restrain the issue of the bonds.

The act of March 4th, 1879 (*Rev. Sup. p. 456* § *4*), has no

application to this case, as clearly appears from the preamble to that act and also by the provisions of the act.

In my opinion, the decree of the court below should be reversed and the priority of the mortgage bonds established.

*For reversal*—THE CHIEF-JUSTICE, ABBETT, DEPUE, GARRISON, LIPPINCOTT, REED, VAN SYCKEL, PHELPS SMITH—9.

*For affirmance*—DIXON, BOGERT—2.