These two cases involving the priority of claims against Club Atlantic, Incorporated, were tried together.
The allegations of the bills of complaint are that the complainant is a banking corporation of the Commonwealth of Pennsylvania; that the defendant Club Atlantic, Incorporated, is a corporation existing under the laws of the State of New Jersey; that on the first day of June, 1929, at a meeting of its stockholders, it authorized the board of directors to issue bonds in the sum of $300,000, to be dated as of said date, and to mature on June 1st, 1931, or sooner, and bearing interest at the rate of six per cent. per annum, and authorizing the board of directors to execute and deliver unto the Second National Bank of Atlantic City, New Jersey, as trustee, a deed of trust, or mortgage, upon all of the property owned by the company, for the purpose of securing the payment of the principal and interest of all of said bonds.
On said date the board of directors of said Club Atlantic, Incorporated, resolved that the said corporation should make, execute and issue bonds in the sum of $300,000, and did execute the said bonds, and did execute to the Second National Bank of Atlantic City, New Jersey, a deed of trust or mortgage to secure the payments thereof; that default was made in the payment called for by said bonds; that on or *Page 297 
about the 20th day of December, 1929, the complainant was substituted in lieu and in place of said Second National Bank as trustee; that $128,000 of said bonds were certified by the trustee; that on or about the 27th day of December, 1929, The Ballinger Company filed its lien claim in the Atlantic county clerk's office against Club Atlantic, Incorporated, and the trustee; that on the 11th day of October, 1930, several persons obtained judgments against Club Atlantic, Incorporated; that there is now due the sum of $128,000 with interest from December 1st, 1929.
All of the allegations are admitted by The Ballinger Company, they disputing, however, and alleging that the lien of their claim is only subject to bonds aggregating $3,000, which were issued prior to the filing of the lien claim, and that all additional bonds were issued after the defendant had filed its mechanics' lien and after notice to the complainant over the objection and protest of defendants, with full knowledge of the complainant and all parties receiving said bonds that Club Atlantic, Incorporated, had suspended business and was insolvent.
The action taken against The Ballinger Company is based upon the same series of facts, and alleges that said mortgage was created in order to finance and pay for the construction of a club house; that Hannum entered into contract to build said club house at a price not to exceed $300,000, which sum was to be paid by the application of said bonds or by the proceeds therefrom, payments of which were to be made to the contractor Hannum in installments of $50,000 when labor and materials to that amount had been performed and furnished, which said $50,000 was to be paid $25,000 in cash and $25,000 in bonds, which bonds were to be taken by the contractor for $900 each; that the building was to be built according to the plans prepared by the defendant The Ballinger Company, which company entered into an agreement with Club Atlantic, Incorporated, on February 9th, 1929, to prepare plans and perform the architectural services for said building. The contract with Hannum provided that no construction work was to be commenced until the first mortgage bonds were created, issued and deposited. *Page 298 
There is an allegation in the bill which reads as follows:
"8. At the time of the negotiations between the said The Ballinger Company and the said Hannum, when the said The Ballinger Company was inducing the said Hannum to enter into a contract with Club Atlantic, Incorporated, for the construction of said building, it was represented to the said Hannum by the said Ballinger Company that the entire costs of the construction of said building should be paid by the application of the bonds, or the proceeds of the sale of the said bonds, and that the payments to be made to the said Hannum, as the contractor, under his agreement with Club Atlantic, Incorporated, should be made as in said agreement provided, by the delivery and acceptance of bonds, and the payment of cash out of the net proceeds of bonds sold, and that the payment to the said The Ballinger Company for their charges for services rendered in connection with the work to be done by them should be made in cash out of the proceeds of the bonds to be secured by the aforesaid mortgage, and that the indenture of mortgage aforesaid, securing said bonds, should be a first lien upon the property aforesaid, and the improvements erected thereon; that in the agreement submitted to the said Hannum for examination, in the printed portion in article IX (a), (b) and (c) there appeared covenants against mechanics' liens; and this article and provisions of the agreement relating to liens were discussed between the said Philip G. Hannum and the said The Ballinger Company, as agent for Club Atlantic, Incorporated, and it was understood, agreed and represented by the said The Ballinger Company that the said article IX, and the subdivisions thereof, should be stricken from the agreement, and should not be a part of said agreement, so that the said Hannum should be entitled to mechanics' liens, if for any reason he should not be paid and satisfied out of the bonds, or the proceeds thereof; that the said Hannum had no knowledge of the terms of the contract between The Ballinger Company and Club Atlantic, Incorporated; that contrary to the said understanding, and either through the mutual mistake of the said Hannum and the Club Atlantic, *Page 299 
Incorporated, as represented by The Ballinger Company, or through the deliberate design, or fraud, of the said The Ballinger Company to prevent the said Hannum from having a right of lien, the aforesaid provision was not stricken from the agreement, and the agreement was signed by the said Hannum, relying upon the representations of the said The Ballinger Company, and without knowledge that the said provision had not been stricken out as agreed and represented; that subsequent to the filing of the lien herein referred to by the said The Ballinger Company, and the institution of a suit by The Ballinger Company to enforce said lien, asserting priority over the bonds secured by the trust mortgage aforesaid, the said Robert Ballinger, who had conducted the aforesaid negotiations with the said Hannum, admitted all of the foregoing, and declared that it was the intention and agreement between The Ballinger Company and the said Hannum, and The Ballinger Company and Club Atlantic, Incorporated, and Philip G. Hannum and Club Atlantic, Incorporated, that the said The Ballinger Company was not to be entitled to any priority of payment over the aforesaid Hannum, and that the said Hannum was to be entitled to a right of lien upon said property for the work done by him."
Hannum supplied labor and material to the amount of $50,346.31, no payment being made to him, and by direction of The Ballinger Company, Hannum discontinued construction, the last work done by him being on October 18th, 1929.
"10. That on or about May 17th, 1929, and subsequent to February 9th, 1929, the date on which The Ballinger Company entered into its agreement with Club Atlantic, Incorporated, and subsequent to May 1st, 1929, the date on which Philip G. Hannum entered into his agreement with Club Atlantic, Incorporated, The Colonial Trust Company held two first mortgages, one in the principal sum of $37,500 made by Club Atlantic, Incorporated, to Island Development Company, dated October 28th, 1927, covering block 82, 45th and Brigantine avenues, Brigantine, New Jersey, which said mortgage was assigned by it to Edward C. Schwab, and by *Page 300 
sundry assignments vested in The Colonial Trust Company; and another first mortgage dated May 26th, 1927, made by Club Atlantic, Incorporated, to Island Development Company, in the principal sum of $125,000 covering blocks 80 and 81, which, after sundry assignments also vested in The Colonial Trust Company; that thereafter the said The Colonial Trust Company merged with complainant, The Pennsylvania Company for Insurance on Lives and Granting Annuities; that said mortgages above referred to were given as security for a note held by The Colonial Trust Company made by Club Atlantic, Incorporated, in the principal sum of $30,000; that for the purpose of enabling the construction to be made under the said contract with the said Philip G. Hannum, and the bonds to be issued under the said indenture of mortgage to be first mortgage bonds, Club Atlantic, Incorporated, requested the said The Pennsylvania Company for Insurance on Lives and Granting Annuities to surrender the said mortgages for satisfaction of record, and to accept in lieu thereof, accounts receivable, which the said The Pennsylvania Company for Insurance on Lives and Granting Annuities agreed to do, in accordance with a certain agreement dated May 17th, 1929, a true and correct copy of which will be produced as and when required at the trial of this cause, wherein, by article IX, it was provided that the said first mortgages then held by the said The Pennsylvania Company for Insurance on Lives and Granting Annuities should be satisfied of record only upon the assignment to it of the said accounts, and on settlement for the construction of said unit and the sale of the said bonds, being the $300,000 of bonds to be certified under and secured by the indenture of trust hereinbefore mentioned, which bonds were to be secured by a mortgage on the said real estate which should be a first lien. That for the purpose of carrying out the provisions of this agreement, Club Atlantic, Incorporated, delivered to The Pennsylvania Company for Insurance on Lives and Granting Annuities, and the said Pennsylvania Company thereupon delivered the said mortgage, together with a proper satisfaction thereof for *Page 301 
delivery to the Club Atlantic, Incorporated, for the purpose of causing the said mortgage to be satisfied in accordance with the said article IX of the said agreement, upon the sale of and settlement for the said $300,000 of said bonds and the providing of cash necessary for the construction of the said building; that the said bonds were not sold and settlement on the sale thereof was not made, so that no person was authorized to deliver for satisfaction, or to satisfy of record the said indentures of mortgages, and Club Atlantic, Incorporated, caused the said indenture of mortgages to be satisfied of record on July 13th, 1929, the date on which the indenture of mortgage aforesaid of Club Atlantic, Incorporated, to The Second National Bank of Atlantic City, N.J., was filed of record; that out of the account receivable assigned to the said The Pennsylvania Company there was paid to it on account thereof, the sum of $2,247, leaving a balance of principal of $27,753 for which the said The Pennsylvania Company received in lieu of and in satisfaction of its first mortgages aforesaid, bonds of the principal sum of $27,700, all of which facts the said The Ballinger Company had knowledge."
The $3,000 of bonds issued by The Second National Bank were issued in sums of $500 to the following: Leonard C. Ashton, William J. McGlinn, J. Silby Felton, James Carstairs, Percival E. Foerderer and M.F. Barringer; that after the discontinuance of construction, and after Club Atlantic, Incorporated, found itself unable to sell said bonds, an agreement was entered into wherein the parties agreed that $125,000 of the aforesaid bonds should be delivered to The Pennsylvania Company for Insurance on Lives and Granting Annuities, to be used as follows: $27,700 in consideration of the release, discharge and satisfaction of the indentures of mortgages aggregating $162,500 before referred to, and $50,600 as agent for Hannum.
Complainants allege "that the mortgage held by the Integrity Trust Company, as trustee, and that the bonds issued thereunder, are in equity, prior to the lien of said The Ballinger Company; that the bonds of the said The Pennsylvania *Page 302 
Company for Insurance on Lives and Granting Annuities should be given the same priority as against the said The Ballinger Company's lien claim that the mortgage of the said The Pennsylvania Company for Insurance on Lives and Granting Annuities would have been entitled to had the same not been canceled of record as herein set forth; that the said The Ballinger Company has, by its conduct as herein set forth, deprived itself of any right of priority over the bonds issued unto the said Philip G. Hannum, now held by the said Philip G. Hannum, or by his transferees, and that said bonds are entitled to priority in this honorable court over the lien claims of The Ballinger Company, by reason of the matters and things herein set forth."
The first question to be considered: Is Hannum barred from proceeding in this cause by reason of the fact that on or about the 23d day of January, 1930, a summons was filed in the supreme court of New Jersey upon an action at law filed in said cause by Hannum against Club Atlantic, Incorporated, for the sum of $49,247.03 and for the sum of $1,099.28 as commissions and for the additional sum of $22,220 as commissions on the total amount of work to be performed?
The defendant Ballinger insists that Hannum had elected his remedy or, as expressed in defendant's reply brief: "In other words, you cannot institute a suit at law and at the same time claim specific performance of the contract to deliver bonds." There has been no election in this case. Suit was brought for the amount alleged to be due and in settlement of that suit, bonds were issued and delivered to Hannum or his agent. This proceeding is to enforce the payment of the said bonds so given. There is no element of election whatever, nor is there any proceeding, as suggested by counsel for the defendant, to claim specific performance of a contract to deliver bonds. The bonds were delivered. All parties admit that the bonds to the amount of $3,000 are prior to all other claims.
The court of errors and appeals, in The Central Trust Co. v.Continental Iron Works, 51 N.J. Eq. 605, held: *Page 303 
"A mortgage dated July 19th, 1889, delivered the same day and recorded July 22d 1889, was given by a gas company to the Central Trust Company, as trustee, to secure bonds to the amount of $350,000. No bonds were issued or sold until September 20th, 1889. The gas company commenced the erection of a building upon the mortgaged premises July 29th, 1889, before the issue of any bonds. Held, that the holders of the mortgage bonds have a lien relating to the time when the mortgage was recorded, and that the mortgage is an encumbrance upon the mortgaged premises prior to the claims for mechanics' liens."
This principle was applied by Vice-Chancellor Lewis in Krause
v. Hartung, 108 N.J. Eq. 507:
"The first mortgage was evidently the ordinary trust mortgage to secure a corporate bond issue. * * * It is a well-known course of practice to secure the entire bond issue by a mortgage and then dispose of the bonds from time to time on various terms. The entire bond issue takes effect and has validity irrespective of when or how many of the bonds have been placed with investors at the time of execution of the mortgage or subsequently. This rule is laid down in Central Trust Co. v. Continental Iron Works,51 N.J. Eq. 605, where the court of errors and appeals, referring to a mortgage such as that here, quotes with approval the following language from various decisions of other states:
"`The bonds being for sale on the mortgage, and passing into the hands of unknown bona fide holders, it would be against public policy to allow subsequent liens to interfere with the apparent priority of the mortgage. * * * Aside from these adjudications the bonds of corporations, secured as are these bonds, are dealt with in commercial transactions and are treated, almost without exception, by the courts as a class by themselves, not subject in all respects to the stricter rules which obtain between natural persons. * * * If this well-established doctrine is shaken, it will destroy the value of millions of securities of railroad and other corporations which have been negotiated on the faith of the priority of the mortgage which secures their issue.'" Central Trust Co. v. Continental Iron Works is also followed in Weinstein v. *Page 304 Anderson, 102 N.J. Eq. 8, and in Micele v. Falduti, 101 N.J. Eq. 103.
The United States circuit court of appeals, third circuit, construed section 15, Mechanics' Lien law (3 Comp. Stat.
(1910) p. 3303, in Murtland v. Empire Trust Co.,39 Fed. Rep. 2d 341), and held:
"The fact that a mortgage is executed to secure bonds which are sold to innocent purchasers, does not make the mortgage prior in its lien to mechanics' lien claimants, unless the mortgage is recorded before the filing of the claims, and then only to the extent of the money actually advanced and applied to the erection of any new building, c., erected upon the mortgaged lands, and also held that the word `created' as used in said section must, on reading of the whole statute, with reference to priorities, relate only to completed transaction, that is, the execution of mortgage, advancement, and full payment of money secured thereby, and recording or registering of mortgage prior to commencement of improvement."
The supreme court of New Jersey, in Young v. Haight,69 N.J. Law 453, held that:
"Under the revised Mechanics' Lien act, the lien of a mortgage, given for moneys advanced and actually used for the erection of a building, is superior to a mechanics' lien filed upon the property subsequent to the recording of the mortgage, notwithstanding the fact that the moneys have been advanced and the mortgage has been executed while the building was in course of erection. This priority is given whether the mortgage is made to secure future advances or money already advanced; the only test is whether the money has been loaned for the erection of, or alteration, repair or addition to, the building, and has been actually applied for that purpose."
It must therefore be held that all bonds issued, the proceeds of which were used in the construction of the building, are entitled to priority over the lien claim. The Ballinger Company knew, in fact prepared the contract with Hannum, of the amount of work performed by Hannum, and gave *Page 305 
their certificate therefor, and while it is true that the contract provided that Hannum was to receive one-half of the amount due in cash and the remainder in bonds, it certainly would be most inequitable to hold that the priority of the bonds taken by Hannum in lieu of cash would fail in priority by reason thereof. The entire issue to Hannum was in payment of the amount due under the contract for labor performed in the construction of said building. If this view is correct, it is unnecessary to determine whether The Ballinger Company had waived any rights in so far as Hannum is concerned.
The Ballinger Company also questions the issuance of these bonds upon the ground that the company was insolvent at the time of such issuance. It has waived its right to make such defense by its consent to the issuance thereof, Exhibit D-1. This is a letter from The Ballinger Company to the Integrity Trust Company, as follows:
"We hereby withdraw our objection to the authentication by your bank of bonds issued by Club Atlantic, Inc., and secured by its mortgage dated June 1, 1929, provided, however, that such action on our part shall not in any way release or affect the lien of The Ballinger Company upon the property of Club Atlantic, Inc., situate in the City of Brigantine, County of Atlantic, State of New Jersey."
It will be noted that this letter consents to the issuance of the bonds. The reservation is only as to the rights of priority, which is dealt with in this case and decided upon other grounds, to which this consent has no relevancy.
Objection is also made to the amount of the mechanics' lien claim filed by The Ballinger Company, upon the ground that the claim is greatly in excess of the amount due. James Radcliffe Sons Co. v. Borough of Hawthorne, 109 N.J. Eq. 309; City HallBuilding and Loan Assn. v. Florence Realty Co., 110 N.J. Eq. 12.
I am satisfied that the amount claimed by The Ballinger Company is excessive, but that it is not invalid by reason thereof.
 A decree will be advised in accordance with these views. *Page 306